IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICARDO W. JOHNS, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-830 |
| | § | |
| JOHN E. POTTER, | § | |
| POSTMASTER GENERAL, UNITED | § | |
| STATES POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending is Defendant John E. Potter's ("Defendant") Motion for Summary Judgment (Document No. 18).  After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows.

## I.  Background

This is an employment dispute in which Ricardo W. Johns, Sr. ("Plaintiff") complains about the treatment received from his immediate supervisor--Sheryl Taylor.  Plaintiff, who worked for the United States Postal Service ("USPS") for 26 years, was promoted to Station Manager in 2002, and retired in 2006.[1]  He was classified as an EAS-20 Manager for the purposes of the USPS pay scale after

---

[1] Document No. 20, ex. B at 12, 21-22.

his 2002 promotion.[2]   In June 2003, Plaintiff requested and was granted a lateral transfer to become Station Manager of the Westbrae Station, which is in Area IV,[3] and where his supervisor was Sheryl Taylor.[4]

Plaintiff alleges that from September 2004 to February 2005, Taylor discriminated against him because of his race (Black-Hispanic), color (Black), national origin (Panamanian), sex (Male), and religion (Muslim), and retaliated against him for EEO activity. Plaintiff also asserts that he was subjected to a hostile work environment.  Defendant moves for summary judgment on all claims.

## II.  Discussion

### A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c).   The movant must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

---

[2] Id., ex. B at 24.

[3] Id., ex. B at 28.

[4] Id., ex. B at 28.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the stan- dards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

3

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552. If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted. Id.

B.   Discrimination

Because Plaintiff lacks direct evidence of discrimination, his claims are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Under this framework, the plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case. After making this *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Lee v. Kansas City S. Ry.. Co., 574 F.3d 253, 259 (5th Cir. 2009). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination. Id.

Plaintiff asserts that Taylor discriminated against him because his race, color, national origin, sex, and religion, as follows:

(1)   on September 15, 2004, he was given a pre-discipline by Manager Taylor and informed that he would be reduced to an EAS-17 and removed from his unit effective September 18, 2004. [Four days later], he was involuntarily reassigned to the Ashford West Station as a supervisor;[5]

(2)   from November 1-5, 2004, his absence was recorded as AWOL for 40 hours;

(3)   on November 29, 2004, he was involuntarily reassigned to the Sage Station as a supervisor;

(4)   on December 15, 2004, his request for 40 hours of annual leave was denied and he had to forfeit the 40 hours; and

(5)   on February 5, 2005, when he returned back to his job at Westbrae Station he was informed there was a shortage totaling $820.36 and he was accountable for the shortage which had surfaced during an audit on December 3, 2004.[6]

To begin with, Defendant asserts that Plaintiff has no evidence to support his claims of religious discrimination. In his Response to Defendant's motion, Plaintiff conclusorily asserts that Taylor discriminated against him because he is Muslim, but cites no

---

[5] In his Original Complaint, Plaintiff asserted that the pre-disciplinary interview and subsequent reassignment were separate acts of discrimination. Because the acts involve the same events, the Court will consider them as a single event.

[6] Document No. 1 at 3-4 (quoting Plaintiff's Original Complaint).

evidence to support such a claim.  Indeed, the only evidence that relates to Plaintiff's religion is Plaintiff's admission that Taylor did *not* discriminate against him because he is Muslim.[7]

---

[7] In his deposition, Plaintiff testified as follows:

Q: Okay. Let me do some follow-up, sir. You're claiming that you were discriminated against because you are a Muslim, is that correct?
A: Yes, ma'am.

Q: Okay. Do you believe that on September 15th, 2004, your manager gave you a pre-d hearing, that you would be removed from the unit effective September 18th, because you are a Muslim?
A: No, ma'am. Not specifically, no.

Q: Okay. On September 22nd, when you were involuntarily reassigned to Ashford West, that's all part of the same thing.
A: Yes, ma'am.

Q: So you don't believe she did that because you were a Muslim; is that correct?
A: Yes, ma'am.

Q: Okay. On November 5th – 1st through 5th, 2004, when you were AWOL'd for 40 hours, you were subsequently paid for that; correct?
A: Yes, ma'am.

Q: And you don't believe you were put on AWOL status because you were a Muslim; do you?
A: No, ma'am.

Q: Okay. When you were reassigned to the Sage Station because you were unhappy at Ashford West, that wasn't done because you were a Muslim; was it?
A: No, ma'am.

Q: Okay. When you had your 40 hours of annual leave denied, that wasn't done because you were a Muslim; was it?
A: No, ma'am.

Because Plaintiff has failed to produce evidence creating so much as a genuine issue of material fact that he was discriminated against because he is Muslim, his claims for religious discrimination fail.  The five acts giving rise to Plaintiff's remaining claims of discrimination based on race, color, national origin, and/or sex are analyzed in turn.

1.   September pre-disciplinary interview and subsequent reassignment to Ashford West Station as a Supervisor

Plaintiff asserts that Taylor discriminated against him when, on either September 15 or September 22, 2004, she conducted a "pre-disciplinary interview" with Plaintiff and told him that (1) he was being temporarily assigned to the Ashford West Station to work under Station Manager Patricia Keyes, and (2) he would be reduced in grade from an EAS-20 Manager to an EAS-17 Supervisor. Taylor held the meeting and transferred Plaintiff to the Ashford West Station because the station that Plaintiff managed--Westbrae Station--received poor reviews in two recent audits.  The first,

---

Q: Okay. And when you went back to your job at Westbrae and you were told there was a shortage that you would be held accountable for, they didn't do that because you were a Muslim: did they?
A: No, ma'am.

Q: Any you didn't- You were never held accountable for that missing money; were you?
A: No, ma'am.

Document No. 20, ex. B at 87-89.

7

called an Internal Control Financial Review ("Internal Review"), occurred on July 9, 2004.[8]   After being counseled about the problems noted in the Internal Review, Plaintiff was required to provide a written plan to fix the problems, and Plaintiff later assured Taylor verbally and in writing that he had fixed the problems.[9]   The second audit was performed on August 30, 2004, by the Office of the Inspector General ("OIG").[10]   The OIG team finished the audit on September 10, 2004, after which it held an exit conference to present its preliminary assessment of the numerous problems found at Westbrae.   In his deposition, Plaintiff acknowledged that most, if not all, of the findings of the OIG audit were valid, and that he "was negligent in overseeing the financial responsibilities of the station" and "ultimately responsible."[11]   Because of the poor OIG audit results, on either September 15 or September 22, 2004, Taylor held the pre-disciplinary interview and transferred Plaintiff to the Ashford West Station.[12]

---

[8] Id., ex. B, Depo. Ex. 2.

[9] Id., ex. C at 3.

[10] Id., ex. C at 3.

[11] Id., ex. B at 40-47.

[12] Id., ex. C at 4.   There is an inconsequential discrepancy in the record about when this pre-disciplinary interview was held. Plaintiff stated that it was held on September 15, 2004.  Id., ex. B at 53.   Taylor stated that it was held on September 22, 2004. Id., ex. C at 4.

Defendant argues that there is no evidence of disparate treatment and Plaintiff therefore fails to establish a *prima facie* case regarding his pre-disciplinary interview and transfer to Ashford West. "To establish disparate treatment, a plaintiff must demonstrate that a 'similarly situated' employee under 'nearly identical' circumstances, was treated differently." Wheeler v. BL Dev. Corp., 415 F.3d 399, 405 (5th Cir. 2005) (citing Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995)).  This standard is strictly construed.  Okoye v. Univ. of Tex. Houston Heath Sci. Ctr., 245 F.3d 507, 514-15 (5th Cir. 2001).  The Fifth Circuit has consistently found that employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered "nearly identical." *See, e.g.*, Lee, 574 F.3d at 259-60.

Plaintiff asserts that all station managers in Area IV--the area managed by Taylor--were similarly situated employees, and that no other station manager who was audited was removed from his station, temporarily assigned to another station, and received a proposed reduction in grade.  Specifically, Plaintiff cites a May, 2006 OIG audit of the Beechnut Station managed by Debra Brown, who was not disciplined for identified discrepancies.  However, the uncontroverted summary judgment evidence establishes that Plaintiff's Westbrae Station was the only station for which Taylor was

responsible that was audited by OIG while Taylor was manager of Area IV.[13]  Moreover, Taylor did not have responsibility for the Beechnut Station when it was audited in late May 2006.    The Beechnut Station had been upgraded "due to the size of the facility" and, as a result, it was under the direct supervision of Postmaster Green, not Taylor.[14]   Taylor therefore had no "super-visory authority over or the ability to discipline the Manager of the Beechnut Station" when OIG audited the station in 2006.[15] Plaintiff alleges that Taylor was the sole decision maker who discriminated against him.   Because Debra Brown--the Beechnut Station Manager--reported to a different decision maker when her station received an OIG Audit, Ms. Brown was not in nearly identical circumstances to Plaintiff.[16]   Plaintiff fails to raise a fact issue that Taylor's discipline of Plaintiff after the OIG's

---

[13] Document No. 20, ex. C at 3.

[14] Document No. 23, ex. 1.

[15] Id., ex. 1.

[16] See Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 302-03 (5th Cir. 2000) (finding employees that did not work in same division, were supervised by different managers, and were terminated under different circumstances were not similarly situated to the plaintiff); cf. Johnson v. Big Lots Stores, Inc., 253 F.R.D. 381, 387 (E.D. La. 2008) (finding that employees in other departments and other by different managers were similarly situated to the plaintiff because the plaintiff's theory was the defendant company had a corporate policy of discrimination, and the other employees were subject to such policy).

critical audit of Plaintiff's Westbrae station reflected any disparate treatment of Plaintiff.

   2.   Placed on AWOL status from November 1-5, 2004

   In early November 2004, Taylor documented Plaintiff as being in "absent without leave" ("AWOL") status, which Plaintiff claims was discrimination against him.   Defendant asserts that Plaintiff has not made a *prima facie* case of discrimination on his AWOL status because he suffered no adverse employment action.   For discrimination claims, adverse employment actions are limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, and not to those decisions by employers that arguably might have some tangential effect upon those ultimate decisions.   Burger v. Cent. Apart. Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999).

   The summary judgment evidence is that shortly after Taylor reassigned Plaintiff to the Ashford West Station, Plaintiff failed to report to work and failed to call Taylor to report his unscheduled absence.[17]   According to an order from Postmaster Green dated May 21, 2004, all "EAS employees in the [C]ity of Houston must call their immediate supervisor for any unscheduled absences."[18]   Taylor had Chris Cisneros--one of her subordinates--

---

[17] Document No. 20, ex. C at 4.

[18] Id., ex. G.

11

send a letter to Plaintiff dated October 26, 2004, stating that Plaintiff was required to notify Taylor of any unscheduled absences and that Houston District policy required an employee to submit "medical documentation or other acceptable evidence" for absences of more than three days.[19]  Plaintiff was told, "You must respond to this letter by COB, Friday 10/29/2004."[20]  Plaintiff did not respond by the deadline and, a few days later, Taylor placed Plaintiff on AWOL status for November 1-5, 2004.

On November 1, 2004, Plaintiff contacted his FMLA Coordinator and requested that he be placed on sick leave under the Family Medical Leave Act ("FMLA").[21]  It is uncontroverted that Plaintiff was later removed from AWOL status and, although he was docked for the period November 1-5, 2004 in his November check, the error was corrected and he received full payment for that week in his December check.  Plaintiff was therefore paid one month late for 40 hours of time from November 1-4, 2004, which is not an ultimate employment decision.  *See* West v. Potter, 540 F. Supp. 2d 91, 95 (D.D.C. 2008) (holding that post office worker alleging she erroneously was charged with 32 hours of leave without pay, instead of the sick leave she properly requested, did not suffer an adverse employment action because "all of the hours incorrectly charged to

---

[19] Id., ex. J.

[20] Id., ex. J.

[21] Id., ex. C at 5.

her as leave without pay were subsequently correctly recorded as sick leave.").[22] Consequently, Plaintiff's claim of discrimination premised on this event fail.

3.   Involuntary reassignment to Sage Station as a supervisor on November 29, 2004

Defendant moves for "no evidence" summary judgment on Plaintiff's claim that his transfer to the Sage Station was discriminatory (race, color, national origin, sex, religion, and retaliation) because (1) Plaintiff admitted in his deposition that

---

[22] A more lenient test for adverse employment actions asks whether the plaintiff suffered a "material employment dis-advantage."  Even courts applying this test have found that the type of inconvenience alleged by Plaintiff does not constitute an adverse employment action.  *See* Jackson v. United Parcel Service, Inc., 548 F.3d 1137, 1141-42 (8th Cir. 2008) (holding that UPS driver did not suffer adverse employment action for being demoted when he was reinstated at his old position three months later and awarded full back pay); Kent v. Iowa, --- F. Supp. 2d. ----, 2009 WL 2902469, at *15-21 (S.D. Iowa Sept. 10, 2009) (holding that the plaintiff did not suffer an adverse employment action from losing five days of pay because of a suspension, when, several months after serving the suspension, it was rescinded and the plaintiff received back pay and the reinstatement of any lost benefits); *but see* Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223-24 (2d Cir. 2001) (finding that employee who was suspended for one week without pay, but was later reimbursed for her lost wages, suffered an adverse employment action because she "at least suffered the loss of the use of her wages for a time.").

he has no such evidence, and (2) Plaintiff himself requested the transfer.[23]  Plaintiff failed to defend this claim in his response to Defendant's Motion and it may therefore be regarded as abandoned.  *See, e.g.*, <u>Scales v. Slater</u>, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (noting that the plaintiff abandoned her disparate impact claim in district court when she neither contested defendant's arguments for dismissal of that claim nor suggested that her statistical evidence demonstrated pretext); <u>Thompson v. Exxon Mobil Corp.</u>, 344 F. Supp. 2d 971, 976 (E.D. Tex. 2004) (holding that where the defendant fully briefed all of the plaintiffs' claims on summary judgment, and the plaintiffs only responded on two claims, the plaintiffs were deemed to have abandoned their remaining claims).  Plaintiff presents no evidence of discrimination when he was transferred to the Sage Station at

---

[23] Document No. 19 at 18-19.

his own request.[24]   Defendant is entitled to summary judgment on

these claims.

---

[24] At his deposition, Plaintiff testified as follows:

Q:  Okay. So if Ms. Taylor said that she transferred you to Sage
    Station because you were unhappy at Ashford West, that would
    not be an incorrect statement; would it?
A:  No, ma'am.

Q:  Okay. One of your other questions--And when she transferred
    you to Sage after you had indicated that you were unhappy at
    Ashford, she didn't do that because of your race; did she?
A:  No, ma'am.

Q:  When she transferred you to Sage because you were unhappy at
    Ashford West, she didn't do it because of your color; did she?
A:  No, ma'am.

Q:  When she transferred you to Sage because you were unhappy at
    Ashford West, she didn't do it because of your national
    origin; did she?
A:  No, ma'am.

Q:  When she transferred you to Sage because you were unhappy at
    Ashford West, she didn't do it because of your sex; did she?
A:  No, ma'am.

Q:  Okay. When she transferred you to Sage because you were
    unhappy at Ashford West, she didn't do in retaliation for
    prior EEO activity, did she?
A:  No, ma'am.

. . . .

Q:  All right. And when she transferred you to Sage because you
    were unhappy at Ashford West, she didn't do it because of your
    religion; did she?
A:  No, ma'am.

Document No. 20, ex. B at 75-76.

4.   Denial of request for 40 hours of annual leave on
     December 15, 2004

Plaintiff asserts that Taylor discriminated against him when she denied his request to take 40 hours of annual leave from December 27, 2004 to January 5, 2005.[25]  At the time, Plaintiff had accumulated 600 hours of annual leave and was allowed to carry forward only 560 hours into the new year.  He therefore forfeited 40 hours of annual leave.  Plaintiff identifies as a comparator Linda Caraway, a female African-American, whose similar request to use excessive annual leave was granted by Taylor.  Manager Taylor states in her declaration the general policy that "[e]mployees must request annual leave for the holiday season well in advance of December," but does not state that such policy was the *reason* Plaintiff's leave request was not approved.[26]  In fact, Manager Taylor stated, "I do not recall ever seeing a leave slip for him for that period.  To my knowledge, I neither granted nor denied leave for that period."  Drawing all inferences in favor of Plaintiff, and considering that unlike his comparator he was not an African American female, a genuine issue of material fact has been raised on whether Taylor denied Plaintiff his 40 hours of leave because of his sex, race, color, and/or national origin.

---

[25] Id., ex. B at 79, ex. C at 6.

[26] *See* Document No. 20, ex. C at 6.

16

5.   <u>Upon his return to Westbrae Station as a Manager,
Plaintiff was told that he was accountable for $820.36 of
the shortage that surfaced during the Internal Review
conducted on December 3, 2004</u>

On February 5, 2005, Plaintiff returned to Westbrae as Station
Manager.  He alleges that he was told by someone that he would be
held accountable for a shortage of $820.36 that surfaced during an
Internal Review conducted at Westbrae on December 3, 2004, while
Plaintiff was working at Sage Station.[27]  The uncontroverted summary
judgment evidence is that Plaintiff never received a formal demand
letter for the shortage and was never required to pay the
shortage.[28]  A mere threat, not attributed in the summary judgment
evidence to any identified individual, that he would have to pay
for the shortage is not an ultimate employment decision.  *See,
e.g.*, <u>Mattern v. Eastman Kodak Co.</u>, 104 F.3d 702, 707-08 (5th Cir.
1997) (holding that verbal threats of discharge, reprimands, and
missed pay increases were not ultimate employment actions);[29]
<u>Washington v. Veneman</u>, 109 F. App'x 685, 689 (5th Cir. 2004)

---

[27] <u>Id.</u>, ex. B at 60.

[28] <u>Id.</u>, ex. B at 89.

[29] Historically, the Fifth Circuit applied this "ultimate
employment decision" standard to all Title VII claims.  <u>McCoy v.
Shreveport</u>, 492 F.3d 551, 559-60 (5th Cir. 2007).  However, in
<u>Burlington N. & Santa Fe Ry. v. White</u>, 126 S. Ct. 2405 (2006), the
Supreme Court abrogated this approach for retaliation claims, but
it remains the standard for discrimination claims.  <u>McCoy</u>, 492 F.3d
at 560.

(threatening disciplinary action is not an ultimate employment action).  Defendant is entitled to summary judgment on this claim.

C.   Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must show that (1) he participated in a Title VII protected activity, (2) he suffered an adverse employment action by his employer, and (3) there is a causal connection between the protected activity and the adverse action.  Pierce v. Tex. Dept. of Crim. Justice, 37 F.3d 1146, 1151 (5th Cir. 1994).  Plaintiff asserts that he was retaliated against because he engaged in two protected activities: (1) he testified against Manager Taylor before Administrative Judge Claudine James in support of Kenneth C. Allen's EEO Complaint ("Allen EEO") in case No. 4G-770-0218-04; and (2) he filed an informal EEO complaint against Taylor on November 1, 2004.[30] Plaintiff alleges that all of the "adverse" acts that serve as the basis for his discrimination claims were also taken to retaliate against him for his testimony in the Allen EEO and for filing his own EEO complaint.

A plaintiff must show that the protected activity at least was one factor motivating the adverse employment action, that is, that there is a causal connection.  See Long v. Eastfield College, 88 F.3d 300, 305 n. 4 (5th Cir. 1996).  The alleged retaliatory acts

---

[30] Document No. 23 at 18.

against Plaintiff occurred between September 2004 and February 2005.   It was not until April 21, 2005, however, that the Administrative Judge ordered the Post Office to produce Plaintiff to testify at a hearing on June 16, 2005.[31]   Thus, the adverse actions about which Plaintiff complains all occurred *before* he testified against Taylor, not afterward, and therefore the retaliation claim fails.   Bradford v. Giessel Barker & Lyman Inc., 58 F. App'x 596, 2003 WL 261842, at *3 (5th Cir. 2003) (holding that the plaintiff could not establish a *prima facie* case of constructive discharge in retaliation for engaging in protected activity because the plaintiff resigned *before* she engaged in the protected activity) (unpublished op.).

Second, Plaintiff alleges that Taylor retaliated against him because he filed an informal EEO complaint against her on November 1, 2004.   The uncontroverted summary judgment evidence is that Taylor did not receive notice of this informal complaint until January 14, 2005, when the Office of EEO Dispute Resolution first contacted her to schedule mediation regarding the complaint.[32]   *See* Soledad v. United States Dep't of Treasury, 304 F.3d 500, 507 (5th Cir. 2002) (affirming the grant of summary judgment on the plaintiff's Title VII retaliation claim where there was little

---

[31] Document No. 20, ex. Y.

[32] Document No. 20, ex. C at 2 (Taylor Decl.), ex. Z at 2 (Wafford Decl.).

evidence to show that the defendant "was even aware" of the plaintiffs activity "and even less to show that he took certain actions because of [the plaintiff's] protected activity"); <u>Casarez v. Burlington N./Santa Fe Co.</u>, 193 F.3d 334, 338-39 (5th Cir. 1999) (affirming summary judgment in a retaliation case because the employer was not aware of the plaintiff's discrimination complaint when it made the employment decision that the plaintiff claimed was retaliatory). Only one of Plaintiff's alleged retaliatory actions occurred after Taylor first learned of Plaintiff's informal EEO complaint on January 14, 2004--namely, the threat by some person in February 2005 that Plaintiff was accountable for an $820.36 shortage discovered during a December Internal Review of Westbrae. As has been seen, that was a hollow threat that had no substance and was not an adverse employment action. In the context of retaliation, an adverse action is an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 241 (2006). Defendant is entitled to summary judgment on the retaliation claims.

D.   Hostile Work Environment

Finally, Plaintiff also asserts that he was subjected to a hostile work environment.  This claim requires proof that (1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) such harassment was based on his protected status, and (4) the harassment complained of affected a term, condition, or privilege of employment.   42 U.S.C. § 2000e-2(a)(1).   For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."   Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks omitted).  "The court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interfered with [the plaintiff's] work performance." Ellis v. Principi, 246 F. App'x 867, 871 (5th Cir. 2007).

None of Taylor's allegedly hostile acts from September 2004 to February 2005 supports a claim of discrimination, except possibly for the denial of annual leave for Plaintiff on December 15, 2004, as to which a fact issue remains for trial.   Plaintiff has proffered no other evidence, except for his assertion that "[o]n more than one occassions [sic]," Taylor made derogatory comments

about Plaintiff's speech, accent, and nationality.[33]   The three things Taylor allegedly said were that he is "not black," is "one of those," and that he is a "black Mexican."[34]   No dates or time frames are given as to when she made any of these three comments, or if they were repeated and, if so, with what frequency.   Viewed in a light most favorable to Plaintiff, the summary judgment evidence fails to raise a fact issue that the comments were so severe or pervasive as to alter Plaintiff's work performance.   *See,* *e.g.,* <u>Baker v. FedEx Ground Package System Inc.</u>, 278 F. App'x 322, 328-29 (5th Cir. 2008) (holding that the defendant's sporadic comments that that "she did not want to work with people like" [the plaintiff] and that "whites rule" were "not sufficiently severe and did not unreasonably interfere with [the plaintiff's] work performance.").   Nor is there evidence that any of these comments was made near or about the time that Taylor denied Plaintiff's leave request on December 15, 2004.   *See* <u>Wooten v. Federal Exp.</u> <u>Corp.</u>, 325 F. App'x 297 (5th Cir. 2009) (finding no hostile work environment as a matter of law where "[t]he connection between [the supervisor's] and other co-workers' race-based comments [which were arguably severe or pervasive], and the more serious workplace actions such as unfavorable shifts and so on, is weak to non-existent."); <u>Felton v. Polles</u>, 315 F.3d 470, 483 (5th Cir.

---

[33] Document No. 20, ex. B at 67.

[34] <u>Id.</u>, ex. B at 66.

2002) (finding that the plaintiff's allegations that denial of leave, investigation of plaintiff by defendants, denial of a promotion, and an unsatisfactory performance evaluation did not constitute harassment because "[t]here are no allegations of intimidation, ridicule, or insults within the actionable time period. Nor are any 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" (quoting <u>Harris v. Forklift Sys., Inc.</u>, 114 S. Ct. 367, 370 (1993)). Plaintiff's hostile work environment claim fails as a matter of law.

### III.  <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant John E. Potter's Motion for Summary Judgment (Document No. 18) is GRANTED as to all of Plaintiff's claims except his claim that he was discriminated against because of his race, color, national origin, and/or sex when Taylor denied Plaintiff's leave request on December 15, 2004, which claim remains for trial.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this <u>15th</u> day of December, 2009.

_Ewing Werlein, Jr._

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE